IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CV-406-FL

| | |
|---|---|
| ANTHONY FAIRLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NORTH CAROLINA DEPARTMENT ) | |
| OF TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

This matter comes now before the court upon defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (DE # 29). Plaintiff has timely responded in opposition, and defendant has filed a reply. In this posture, the issues raised are ripe for adjudication. For the reasons set forth below, defendant's motion is granted.

## STATEMENT OF THE CASE

On August 21, 2009, plaintiff initiated this action in Wake County Superior Court, alleging that defendant discriminated against him on account of his race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Citing this court's federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441, defendant removed the action to this court on September 16, 2009. After receiving an extension of time to do so, defendant answered the complaint on October 19, 2009, denying liability and asserting a number of affirmative defenses.

After the close of discovery, on October 7, 2010, defendant filed the instant motion for summary judgment. It contends that plaintiff cannot establish a *prima facie* case of racial

discrimination because he did not suffer an adverse employment action. Defendant also offers a legitimate, non-discriminatory reason for the employment action at issue, and argues that plaintiff has not put forward any evidence for a jury to conclude that the proffered reason was given as a pretext for discrimination. After receiving an extension of time in order to obtain substitute counsel, plaintiff responded in opposition on March 3, 2011. Defendant timely replied.

## STATEMENT OF THE UNDISPUTED FACTS

The undisputed facts, in the light most favorable to plaintiff, are as follows. Plaintiff, an African-American, began a probationary period of employment with defendant on October 28, 1989. He was employed to produce instructional training videos for defendant's human resources department. Plaintiff was the only individual producing such videos at the time he was hired, and founded the Instructional Television Media Unit ("the ITVM Unit"). On February 17, 1990, plaintiff completed his probationary period of employment and was enrolled as a permanent full-time employee with the job title "Media Technician II."

Plaintiff's work continually met or exceeded defendant's expectations. In 1993, plaintiff was promoted to Television/Media Services Coordinator I. In 1994, he earned a Master of Arts degree in education technology. He was further promoted in 1998 to Television Producer Director II. Throughout the 1990s and presumably continuing through the present date, plaintiff earned additional certifications and continued to produce successful instructional training videos. By 2005, he had been promoted to Television/Media Services Coordinator II, the position he now holds.

In 2007, defendant hired an external consultant, McKinsey & Company ("McKinsey"), to assist with a productivity analysis. McKinsey launched a three-phase process to evaluate defendant, design systems and processes to more efficiently support the organization, and implement specific

initiatives to improve performance. McKinsey published a report of its findings and recommendations. One of the recommendations was to design a more productive organization by rearranging defendant's organizational structure to maximize collaboration and efficiency.

A committee composed of managers and analysts employed by defendant was established to consider the recommendations of McKinsey and to propose specific changes that would eliminate redundancies and group common roles and responsibilities within the organization. The committee solicited and received input from employees. The director of defendant's Human Resources Department, in which the ITVM Unit was located, recommended transferring that unit from the Human Resources Department to the Communications Office. Although the ITVM Unit created instructional training materials, many of their projects involved videotaping public hearings and other events. The broader focus of the ITVM Unit, it was felt, warranted transferring it to a department with an exclusive multimedia focus, as no one else in the Human Resources Department had any experience or expertise with video production or other multimedia.

As recommended by the committee, many employees were transferred to different units and entire units were moved to different departments. As relevant here, the ITVM Unit was transferred to and consolidated with the Creative Services Unit within the Communications Office on September 8, 2008. The Creative Services Unit was and is supervised by Emily Jones, a Caucasian female with the position "Artist Illustrator III Supervisor." At the time of transfer, the ITVM Unit was comprised of plaintiff, another African-American man, and a Caucasian woman.

Following the transfer, plaintiff retained the same salary and pay grade. He remains a TV Media Services Coordinator II, and continues to provide video production services for training films, instructional films, promotional films, and commercials. However, plaintiff no longer has

3

Case 5:09-cv-00406-FL   Document 54   Filed 04/11/11   Page 3 of 8

supervisory responsibility within the ITVM Unit, because that unit has been subsumed within the Creative Services Unit headed by Emily Jones. According to plaintiff, Ms. Jones is less qualified than he is to run the consolidated units.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

B.  Analysis

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . . ." 42 U.S.C. § 2000e-2(a)(1). There are two methods by which a plaintiff may establish a claim for discrimination sufficient to avert summary judgment:

> First, he may present direct evidence of his superiors' discriminatory intent. Second, he may attempt to satisfy the test specified in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which allows him to raise an inference of discriminatory

intent by showing that he was treated worse than similarly situated employees of other races. Defendants are then entitled to respond by presenting a legitimate, nondiscriminatory reason for their actions. The burden would finally shift back to [plaintiff] to demonstrate that this reason was a pretext for discrimination.

Sterling v. Tenet, 416 F.3d 338, 345 (4th Cir. 2005) (internal citations omitted).

Plaintiff relies in this case on the burden-shifting scheme set forth in McDonnell Douglas. To establish the *prima facie* case necessary to meet the McDonnell Douglas test, plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). The parties agree that, as an African-American, plaintiff has established the first element of his *prima facie* case. See, e.g., Love-Lane v. Martin, 355 F.3d 766, 787 (4th Cir. 2004). Plaintiff also has established the second element, as defendant does not dispute that plaintiff's job performance was satisfactory.

Defendant argues that plaintiff cannot establish that he was subject to an adverse employment action, the third element of his *prima facie* case, because he was subject to a purely lateral transfer. Defendant relies on the Fourth Circuit's decision in Boone v. Goldin, 178 F.3d 253 (4th Cir. 1999), in which the court held that "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect on [him]." Id. at 256. Elaborating on the "significant detrimental effects" that could form the basis of a Title VII violation, the court explained that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action . . . ." Id. at 256-57; see also James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004).

5

According to defendant, plaintiff's lateral transfer caused by the ITVM Unit's consolidation with the Creative Services Unit within the Communications Office – itself part of a much larger reorganization – did not have any significant detrimental effect on plaintiff, whose salary, job title, and core responsibilities remained the same following the transfer. Plaintiff, agreeing that Boone controls the outcome of this case, contends that his supervisory and managerial responsibilities have diminished. He also argues that the transfer denied him the opportunity for promotion and other career growth opportunities because additional management experience would be required for any further career advancement.[1]

A plaintiff must demonstrate that an employment action is adverse by objective evidence. See Stout v. Kimberly Clark Corp., 201 F. Supp. 2d 593, 602 (M.D.N.C. 2002) ("[T]he differences between the two positions must be demonstrated through objective facts and not merely the plaintiff's subjective values or perceptions of either position."); cf. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (holding, in the context of a Title VII retaliation claim, that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse"). The evidence before the court is meager, and is not adequate to substantiate plaintiff's allegations that his supervisory or managerial responsibilities have objectively diminished in any significant respect. Plaintiff now reports to Ms. Jones rather than the head of the Human Resources Department, and the ITVM Unit has been consolidated with another, but these small changes are not

---

[1] Plaintiff also offers evidence relating to additional "adverse employment actions" allegedly caused by previous transfers of the ITVM Unit in 2003 and 2005. The complaint and plaintiff's charge with the Equal Employment Opportunity Commission deal only with the 2008 transfer. As such, any previous transfer is superfluous to the court's consideration of plaintiff's claim. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge [with the EEOC], those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."). Likewise, plaintiff's allegations of retaliatory disciplinary action, raised for the first time in his memorandum in opposition to defendant's motion for summary judgment, are not before the court.

material where the evidence before the court suggests that plaintiff continues to coordinate and supervise the production of films and commercials for defendant. Cf. Caussade v. Brown, 924 F. Supp. 693, 701 (D. Md. 1996) (finding no adverse employment action where plaintiff could "not point to one specific lost responsibility" after a transfer). Moreover, plaintiff has put forward no evidence to support his assertion that his opportunities for future promotion were affected.

But even assuming that he could meet the third element of his *prima facie* case, plaintiff has not put forward any competent evidence demonstrating that he was treated differently from similarly situated employees who were not African-American. In other words, plaintiff has not shown that other employees transferred as part of the reorganization did not face the same reductions in responsibility that he allegedly suffered. Indeed, based upon the sworn declaration of defendant's Coordinator for Strategic Resources that "entire units were transferred to different offices" and that "many employees were reorganized into new or different units" (Canales Aff. ¶ 8), the court finds it extremely unlikely that the responsibilities of other employees were not similarly altered.[2]

Finally, even were the court to assume, contrary to its conclusions above, that plaintiff could establish a *prima facie* case, defendants have offered a legitimate, nondiscriminatory reason for plaintiff's transfer: the consolidation of the ITVM Unit with the Creative Services Unit as part of a larger organizational realignment. Plaintiff has put forward no evidence that this rationale was a

---

[2] The court reiterates, however, that it is the lack of any evidence produced by plaintiff on this issue, and not the court's skepticism of his allegations, that prevents plaintiff from establishing the fourth element of his *prima facie case*. Based on the court's review of the record, it appears that the only evidence that has been presented to the court which could support plaintiff's allegations are his unsworn discovery responses, found on the docket as the fifth attachment to docket entry 33, in which he states: "On information and belief, no white employees were similarly reduced in position as a part of this purported reorganization. On information and belief, no white employees were placed under the supervision of substantially less experienced . . . persons." Such assertions, based only upon information and belief rather than the personal knowledge of the declarant, do not constitute competent evidence for purposes of summary judgment. See, e.g., Ambling Mgmt. Co. v. Univ. View Partners, LLC, 581 F. Supp. 2d 706, 720 (D. Md. 2008); Malina v. Baltimore Gas & Elec. Co., 18 F. Supp. 2d 596, 605 n.4 (D. Md. 1998).

7

pretext for discrimination. See Sterling, 416 F.3d at 345. He cannot "rely on his 'own assertions of discrimination[, which] in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.'" Adams v. Trs. of the Univ. of N.C. Wilmington, --- F.3d ----, 2011 WL 1289054, at *8 (4th Cir. 2011) (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989)).

Because plaintiff has not established his *prima facie* case, he has not raised an inference of discriminatory intent. Nor would he be able, on the record before the court, to carry his ultimate burden of demonstrating that the legitimate justification for his reassignment was a pretext for discrimination. Plaintiff thus has failed to meet the requirements of the McDonnell Douglas burden-shifting test, and defendant is entitled to summary judgment on the lone Title VII claim asserted in the complaint.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment (DE # 29) is GRANTED. The Clerk of Court is directed to enter judgment for defendant and to close this case.

SO ORDERED, this the 8th day of April, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge